FILED
UNITED STATES DISTRICT COURT
DENVER, COLORADO

APR 27 2011

GREGORY C. LANGHAM
CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. __11-CV-1117__
(To be supplied by the court)

Randolph V Brown Sr , Plaintiff,

v.

FlexTronics USA Inc ,
1675 Broadway ~~Company~~ ,
Agent: The Corporation Company
Suite 1200 ,
Denver, Co 80202 ,

_____ ,

_____ ,

_____ , Defendant(s).

(List each named defendant on a separate line.)

**COMPLAINT**

## PARTIES

1. Plaintiff **Mieke Brown** is a citizen of **USA**
   who presently resides at the following address:
   **1319 Columbine CT Arlington, TX 76013**

2. Defendant _____ is a citizen of _____
   who live(s) at or is/are located at the following address:
   _____

3. Defendant _____ is a citizen of _____
   who live(s) at or is/are located at the following address:
   _____

   (Attach a separate page, if necessary, to list additional parties.)

## JURISDICTION

4. Jurisdiction is asserted pursuant to following statutory authorities:
   _____
   _____

5. **Briefly state the background of your case:**

   Back in June of 2008, before I went on Medical Leave, I brought a Complaint to Human Resources about my Supervisor David Verhassen. I Suspected him in Violating The Hiring Practices of Hiring People of Color. Melissa LightBody was an HR Representative at The Time I brought This Complaint To her, and now I understand after my Termination she became Manager over The HR Department. On July 28, 2008 I was Released From Medical Care and put on Suspension For Violating FlexTronics Ethics Rules For Submitting an Applicant For Hire, They Claim was a Relative of mine. Then on July 31, 2008 I was Terminated

(Rev. 07/06)                                2

# FIRST CLAIM FOR RELIEF
## AND SUPPORTING FACTUAL ALLEGATIONS
(Please number your paragraphs and attach any necessary additional pages.)

Attachments are as Follewed

1) My Filing with EEOC in August 2008
   Item #2

2) Copy of FlexTronics Reply To my Allegations Agensnt Them.
   Item #3

EEOC Form 5 (5/01)

Item #2

| CHARGE OF DISCRIMINATION<br>This form is affected by the Privacy Act of 1974. See enclosed Privacy Act Statement and other information before completing this form. | Charge Presented To:<br>☐ FEPA<br>☒ EEOC | Agency(ies) Charge No(s):<br>541-2008-02949 |
|---|---|---|

Colorado Civil Rights Division                     and EEOC
*State or local Agency, if any*

| Name (indicate Mr., Ms., Mrs.)<br>**Mr. Randolph V. Brown, Sr.** | Home Phone (Incl. Area Code)<br>**(719) 434-2335** | Date of Birth<br>**08-16-1957** |
|---|---|---|

Street Address: **6921 Mill Brook Circle, Fountain, CO 80817**

Named is the Employer, Labor Organization, Employment Agency, Apprenticeship Committee, or State or Local Government Agency That I Believe Discriminated Against Me or Others. *(If more than two, list under PARTICULARS below.)*

| Name<br>**FLEXTRONICS** | No. Employees, Members<br>**500 or More** | Phone No. (Include Area Code)<br>**(303) 242-4367** |
|---|---|---|

Street Address: **5619 Dtc Parkway, Greenwood Village, CO 80111**

DISCRIMINATION BASED ON (Check appropriate box(es).)
☒ RACE   ☒ COLOR   ☐ SEX   ☐ RELIGION   ☐ NATIONAL ORIGIN
☒ RETALIATION   ☐ AGE   ☐ DISABILITY   ☐ OTHER (Specify below.)

DATE(S) DISCRIMINATION TOOK PLACE
Earliest: **07-28-2008**    Latest: **07-31-2008**
☐ CONTINUING ACTION

THE PARTICULARS ARE (If additional paper is needed, attach extra sheet(s)):

I. On or about 072808, I was suspended from my position of Territorial Manager and on or about 073108, I was discharged.

II. I was told I was discharged for the following reasons: Complaints about me from Verizon Wireless Management; complaints about me from my managers about my job performance; and trying to hire my wife's nephew.

III. I believe I have been discriminated against because of my race/color (Black) and in retaliation for having opposed a discriminatory practice in violation of Title VII of the Civil Rights Act of 1964, as amended, in as much as:

a. I was performing in a satisfactory manner. I had never been written up for anything during my employment nor had my ethics brought into question.

b. I was suspended/discharged shortly after returning to work from a medical leave. Just prior to my leave, I voiced my concerns about the company not hiring Black employees in the Verizon Wireless stores to a Human Resources representative who is now the Human Resources Manager. I also advised her that my supervisor was bypassing qualified Black applicants for less qualified white ones.

I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or phone number and I will cooperate fully with them in the processing of my charge in accordance with their procedures.

I declare under penalty of perjury that the above is true and correct.

Date: 4/26/11

NOTARY – When necessary for State and Local Agency Requirements

I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief.
SIGNATURE OF COMPLAINANT

SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (month, day, year)
April 26th

LATOYA JOHNSON
Notary Public, State of Texas
My Commission Expires
January 4, 2012

CP Enclosure with EEOC Form 5 (5/01)

**PRIVACY ACT STATEMENT:** Under the Privacy Act of 1974, Pub. Law 93-579, authority to request personal data and its uses are:

1. **FORM NUMBER/TITLE/DATE.** EEOC Form 5, Charge of Discrimination (5/01).

2. **AUTHORITY.** 42 U.S.C. 2000e-5(b), 29 U.S.C. 211, 29 U.S.C. 626, 42 U.S.C. 12117.

3. **PRINCIPAL PURPOSES.** The purposes of a charge, taken on this form or otherwise reduced to writing (whether later recorded on this form or not) are, as applicable under the EEOC anti-discrimination statutes (EEOC statutes), to preserve private suit rights under the EEOC statutes, to invoke the EEOC's jurisdiction and, where dual-filing or referral arrangements exist, to begin state or local proceedings.

4. **ROUTINE USES.** This form is used to provide facts that may establish the existence of matters covered by the EEOC statutes (and as applicable, other federal, state or local laws). Information given will be used by staff to guide its mediation and investigation efforts and, as applicable, to determine, conciliate and litigate claims of unlawful discrimination. This form may be presented to or disclosed to other federal, state or local agencies as appropriate or necessary in carrying out EEOC's functions. A copy of this charge will ordinarily be sent to the respondent organization against which the charge is made.

5. **WHETHER DISCLOSURE IS MANDATORY; EFFECT OF NOT GIVING INFORMATION.** Charges must be reduced to writing and should identify the charging and responding parties and the actions or policies complained of. Without a written charge, EEOC will ordinarily not act on the complaint. Charges under Title VII or the ADA must be sworn to or affirmed (either by using this form or by presenting a notarized statement or unsworn declaration under penalty of perjury); charges under the ADEA should ordinarily be signed. Charges may be clarified or amplified later by amendment. It is not mandatory that this form be used to make a charge.

**NOTICE OF RIGHT TO REQUEST SUBSTANTIAL WEIGHT REVIEW**

Charges filed at a state or local Fair Employment Practices Agency (FEPA) that dual-files charges with EEOC will ordinarily be handled first by the FEPA. Some charges filed at EEOC may also be first handled by a FEPA under worksharing agreements. You will be told which agency will handle your charge. When the FEPA is the first to handle the charge, it will notify you of its final resolution of the matter. Then, if you wish EEOC to give Substantial Weight Review to the FEPA's final findings, you must ask us in writing to do so <u>within 15 days</u> of your receipt of its findings. Otherwise, we will ordinarily adopt the FEPA's finding and close our file on the charge.

**NOTICE OF NON-RETALIATION REQUIREMENTS**

Please **notify** EEOC or the state or local agency where you filed your charge **if retaliation is taken against you or others** who oppose discrimination or cooperate in any investigation or lawsuit concerning this charge. Under Section 704(a) of Title VII, Section 4(d) of the ADEA, and Section 503(a) of the ADA, it is unlawful for an *employer* to discriminate against present or former employees or job applicants, for an *employment agency* to discriminate against anyone, or for a *union* to discriminate against its members or membership applicants, because they have opposed any practice made unlawful by the statutes, or because they have made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the laws. The Equal Pay Act has similar provisions and Section 503(b) of the ADA prohibits coercion, intimidation, threats or interference with anyone for exercising or enjoying, or aiding or encouraging others in their exercise or enjoyment of, rights under the Act.

# FLEXTRONICS

October 21, 2008

Mr. Andrew G. Williams, Supervisory Investigator
Denver Field Office
303 East 17th Street Avenue
Denver, CO 80203

RECEIVED
OCT 22 2008
EEOC DENVER
DISTRICT OFFICE

Re:   Charging Party: Mr. Randoph V. Brown, Sr.
      EEOC Complaint No. 541-2008-02949

Dear Mr. Williams:

This letter serves as the initial Position Statement of Flextronics Retail Technical Services, referred to in the Charge as Flextronics International[1] ("Flextronics" or "the Company"), and in response to the above-referenced charge of discrimination filed by Randolph V. Brown, Sr. "Mr. Brown" or "Complainant". The pending charge alleges that Flextronics discriminated against Mr. Brown on the basis of his race/color, black, and in retaliation for having opposed a discriminatory practice in violation of Title VII of the Civil Rights Act of 1964, as amended. Specifically, he alleges that he was discriminated against relative to the decision to terminate him after he voiced his concerns about the Company not hiring Black employees. Flextronics emphatically denies it discriminated against Complainant on the basis of race/color, or any other basis, at any time during his employment with the Company; nor did the Company retaliate against Complainant for any reason. As will be shown below, Mr. Brown had a pattern of performance deficiencies as well as an ethics violation which lead to his termination. Contrary to Mr. Brown's claim of retaliation, Complainant did not report any discriminatory practices to Human Resources or through any other available reporting pathway until after he was suspended for a policy violation. Flextronics, while investigating Mr. Brown's allegations, reviewed applicant demographics in the Colorado region and the information gathered does not show evidence of any systemic discrimination.

By submitting this response, Flextronics does not waive any legal defenses it may have to this Charge. If additional facts are uncovered, Flextronics may wish to raise other procedural or substantive issues as a complete or partial defense. Flextronics also reserves the right to supplement this response to address other matters as circumstances may dictate.

As an initial matter, please be aware that Flextronics has a well-established policy prohibiting discrimination and violence in the workplace. The Company takes all allegations of workplace discrimination and violence seriously and conducts prompt, full and fair investigations of all claims. Pursuant to this policy, the Company thoroughly investigated the charge submitted to the Agency by Complainant once the allegations were brought to our attention.

---

[1] As of October 1, 2007, Flextronics International acquired Solectron Corporation. Some of the documents provided still have the Solectron logo as we transition into a combined company.

## BACKGROUND INFORMATION

Randolph V. Brown, Sr. worked in the Retail Technical Services (RTS) division of Flextronics Americas LLC, which is a subsidiary of Flextronics International, a leading electronics manufacturing services provider. The Company currently has an exclusive and fairly unique partnership with Verizon Wireless that calls for the Company to provide customer technical support to Verizon's retail wireless phone consumers.

Retail Technical Services delivers customer technical support inside Verizon stores where Flextronics employees perform face-to-face customer service including retail support, equipment (mostly wireless phones) programming, maintenance and troubleshooting. Flextronics is responsible for recruiting, hiring, training and supervising Flextronics technicians assigned to Verizon stores. The Company employs roughly 3000 associates nationwide in the RTS organization and each associate is assigned to a particular Verizon store to perform the technical support function. Depending on the location, physical size of the store and the amount of consumer traffic, the store may have one to six (or more) Flextronics technicians supporting the customers. The Flextronics technicians are hired, trained and directed by a Flextronics management team including a store level front line supervisor (Team Leader, though not every store supports this position), a Territory Manager who is responsible for a number of technician teams in a particular geographic area, and a Regional Manager who oversees several areas in a large geography. The management representatives in the RTS organization are accountable to the management team of Verizon with Flextronics performance under the contract routinely measured through store level audits[2] and other such mechanisms including workplace conduct.

Given the proprietary and sensitive nature of the Company's relationship with Verizon, all employees in the RTS organization are held to very specific customer service requirements, performance expectations and workplace conduct standards. A summary of the most critical policies and standards ("Statement of Key Policies" or "SKP") is issued to all employees upon hire and thereafter, employees are frequently reminded by management of the topics covered by the SKP and their importance. The SKP addresses, among other things, handling customer information, managing Verizon assets, protecting proprietary data and professionalism in the workplace. The SKP notifies employees that failure to comply with the SKP and related policies is grounds for discipline, including the possibility of termination.

### Complainant Employment History

Randolph V. Brown, Sr. was hired into the Retail Technical Services division on June 25, 2006 as a Customer Service Technician in Dallas, TX. In the ordinary course of preparing Complainant for work in the Verizon store, Flextronics provided Mr. Brown with specific documented policies and standards ("SKP") (Appendix A), the Code of Business Conduct and Ethics (Appendix B), and a robust Associate Orientation

---

[2] Audits looked at such things as productivity metrics, sales figures, inventory reconciliation, customer service and policy compliance.
Re: Charging Party: **Mr. Brown EEOC Complaint No. 541-2008-02949**

including training classes in Customer Service Skills, Systems Training and Required Technical Training.

On March 2, 2008, Mr. Brown was promoted to Territory Manager and transferred to Denver, Colorado reporting to David Verheggen[3], Regional Manager Colorado & Wyoming. The Territory Manager position provided a full spectrum of employee management and business reporting for multiple retail store settings. Mr. Brown managed 18 technicians at 5 retail store locations within the Denver market. Flextronics continued to train Mr. Brown through both formal and on-the-job training sessions in order to support him in the successful execution of his duties as Territory Manager. Mr. Brown's main role was to manage the technicians placed in the Verizon stores. His job responsibilities included supporting and managing the performance of the technicians, maintaining adequate staffing levels within the stores, and ensuring the store's work schedules best supported the needs of the business. In addition, Mr. Brown regularly provided to his manager business reports, such as staff turnover and other required metrics, which showed how his territory was performing against goals.

Shortly after Mr. Brown was promoted to Territory Manager and transferred to Denver, Mr. Verheggen received a concerning email regarding Complainant's management style. The email was written by one of the technicians working under Mr. Brown and expressed a concern that Mr. Brown's method of communication was highly discouraging to the workers and was causing technicians to leave the Company (Appendix C). The email explained that Mr. Brown yells at the technicians, was overbearing, and scheduled meetings that caused disruptions in the business. Mr. Verheggen coached Mr. Brown over the phone regarding the concerns raised and Mr. Brown agreed to begin using a more personal, one-on-one approach when communicating with the technicians. On April 11th, Mr. Brown completed his first formal training course, a manager basics workshop, for the Territory Manager position. He continued to get feedback on his communication methods from Mr. Verheggen with specific suggestions on how to include the technicians and team leads in the decision making process and to work towards earning the respect of the team.

Mr. Brown completed his next training class as a Territory Manager on May 21st titled Building Relationship Versatility (Social Styles). As a Territory Manager Mr. Brown was not only the manager of technicians and team leads but was also the liaison between Flextronics and the Verizon Store Managers (employees of Verizon). His client relationships were important to managing within the Verizon store environment. On May 16th Mr. Verheggen visited three stores in Mr. Brown's market[4] and received negative feedback from both the technicians and store managers regarding Complainant's communication style. Again Mr. Verheggen coached Complainant on specific changes he would like to see in Mr. Brown's communication style including spending time on the sales floor with his technicians, checking in with store managers upon his arrival, attending at least two District Manager meetings each month. Mr. Brown continued his training for Territory Manager and completed a third course, "How

---

[3] David Verheggen, Regional Manager, White, Male
[4] Mr. Verheggen regularly visited stores within each of the market areas falling under his jurisdiction. These visits allowed him to better assess the performance of the stores, the viability of the relationships between Flextronics and Verizon, and the performance of his direct reports (Territory Managers).
Re: Charging Party: **Mr. Brown EEOC Complaint No. 541-2008-02949**

to Document Employee Performance and Performance Management", on June 3rd and 4th. In addition to the Retail Technical Services Training that is required for every Territory Manager, Mr. Brown also completed the Company's Code of Business Conduct and Ethics training which was required of all employees (Appendix D). The Company requires refresher training annually on the Code and, with the new acquisition[5], all employees were required to take the Flextronics training and acknowledge, in writing, that they had received the Code of Business Conduct and Ethics.

In the months that followed Mr. Brown's move into the Territory Manager role, he experienced high turnover in the West Denver market. From mid March to mid July the market lost 6 of the 18 technicians (5 stores) representing a 33.3% rate of attrition. Mr. Brown's communication issues with the technicians were a contributing factor to the high turnover rate in the market. Maintaining staffing levels required to meet customer demands within the Verizon stores is one of the primary metrics of performance within each market. Flextronics is measured heavily on our ability to staff the appropriate technical talent to cover each shift. Complainant's market was experiencing scheduling challenges and the high turnover was creating great concern within the Verizon store management.

In early June, Mr. Brown contacted Melissa Lightbody[6], Human Resources Manager, to assist him with hiring an applicant for the Arvada store. Complainant described a customer he had assisted in on of the Verizon stores. Mr. Brown stated that the customer had really impressed him and that he would like to make him an offer. Ms. Lightbody asked Complainant to arrange for Mr. Verheggen to perform a second round interview with the applicant and to submit the application for a background check. On June 8, 2008 Complainant provided the applicant, Dale Little[7], for Mr. Verheggen to conduct a second interview. Mr. Brown advanced the applicant alleging that he had interviewed Mr. Little and wanted to move forward with the hire. Mr. Verheggen interviewed Mr. Little and discovered that his application stated the same physical address and phone number as Complainant. In addition, Mr. Verheggen found out that the applicant, Dale Little, was the nephew of the Complainant's wife. Mr. Brown did not divulge the information regarding his relationship with the candidate to anyone in Human Resources or management. In fact, when questioned about his relationship with Mr. Little, Complainant denied that Mr. Little was his nephew or that there was any relation between himself and the applicant. After continuous probing, Mr. Brown admitted that Mr. Little was his wife's nephew, that Mr. Little was in fact living with him, and further state that it was his responsibility to find Mr. Little a job. Mr. Brown's actions were in direct violation of the Code of Business Conduct and Ethics Policy that Complainant reviewed, was trained on and acknowledged receipt of during his onboarding and on an annual basis (Appendix D). Not only was Mr. Little related to Mr. Brown, Mr. Brown was going to hire him into a position with direct reporting relationship, failed to disclose that information in advance of the interview activity, and later denied the relationship existed.

---

[5] As of October 1, 2007, Flextronics International acquired Solectron Corporation.
[6] Melissa Lightbody, Human Resource Manager, White, Female
[7] Dale Little, Applicant, Black, Male
Re:   Charging Party: **Mr. Brown EEOC Complaint No. 541-2008-02949**

Between June 6, 2008 and June 17, 2008 Mr. Brown took some time off due to health reasons. Complainant went on an official leave of absence between June 25th and July 25th. Upon his return to work he was suspended with pay based on the need to clear up paperwork including his final check[8]. The Company had completed the investigation regarding Mr. Brown's ethics violation and determined that termination was the appropriate action. Mr. Brown was terminated on July 31st for his violation of the Code of Business Conduct and Ethics.

*Mr. Brown's formal complaint*

Flextronics provides a number of different reporting pathways that employees may access to bring an ethical concern or other alleged policy violation to the Company's attention. Employees are provided detailed information on the different reporting pathways through the Code of Business Conduct and Ethics Training and are required to acknowledge that they are aware and understand these pathways. Mr. Brown submitted his first complaint on July 29, 2008 to Carol Dixon[9], Human Resources Director (Appendix E). Ms. Dixon reviewed the complaint and launched into an immediate investigation.

Prior to completing the investigation and post termination, Mr. Brown began releasing public statements about Flextronics that were libelous and defamatory. The first statement was an email that claimed Flextronics discriminated against African Americans, and that Flextronics rejected a number of African American candidates that were presented by Complainant for employment consideration (Appendix F). In addition the letter stated the Complainant's intent to picket a Verizon store on August 11th. On August 2, 2008, Complainant continued his efforts against the company by handing out fliers in front of a Verizon store (Appendix G). The company immediately sent Mr. Brown a letter demanding that he immediately terminate any plans to interfere with Flextronics' or Verizon's business.

Ms. Dixon completed the investigation and noted Mr. Brown's allegations regarding Mr. Verheggan's hiring practices and retaliation were patently false. It was in fact noted that Mr. Brown submitted only two African American candidates for recommendation for employment. One of the applicants did not meet the skill and qualification requirements and the other candidate was a relative of the Complainant. Mr. Brown did not divulge the relationship and submitted the applicant to work in a direct reporting relationship. In addition, Mr. Brown had not approached Ms. Lightbody about any alleged discriminatory practice at anytime during his employment. On August 7, 2008, in response to Mr. Brown's post termination activities and to show the completion of the investigation, the company sent Complainant a response (Appendix H).

## RESPONSE to the ALLEGATIONS

---

[8] Based on Colorado State law employees must receive the final paycheck on the date of termination.
[9] Carol Dixon, Human Resource Director, Black, Female
Re:    Charging Party: **Mr. Brown EEOC Complaint No. 541-2008-02949**

Mr. Brown alleges that he was discriminated against based on his race/color, black, and retaliated against relative to the termination decision. Contrary to the Complainant's allegation in the pending Charge, he was not subjected to discrimination in the workplace or terminated due to retaliation. Mr. Brown has failed to disclose that he not only deceitfully presented his nephew as an applicant for hire under his direct reporting relationship, violated company policy by lying about his relationship with a candidate to circumvent Flextronics' policy against nepotism, but in addition continued to lie when questioned about his relationship.

Complainant did have performance issues that the Company continued to work with him through both in-class and on the job training programs as well as having continuing coaching sessions with his manager. Mr. Verheggen continued to get complaints from Verizon even an email that described why Mr. Brown was a detriment to the business (Appendix I). Mr. Brown was not terminated solely for performance as the Company was providing support and counseling that he needed to turnaround his performance issues. Mr. Brown's reason for termination was his violation of the Code of Business Conducts and Ethics policy. M[redacted] acknowledgement of the Code but also due to the way he presented the applicant, Mr. Little, as just a customer that he was impressed with and his continued lies about the relationship after it was identified in the second round interview.

Mr. Brown's allegation that he approached Human Resources regarding alleged discriminatory hiring practices is false. Ms. Lightbody has no knowledge of any conversations prior to Mr. Brown's leave of absence or anytime during his employment with the company about a concern that the company does not hire black employees. In light of the facts above, it is clear that the Company not only did not discriminate against the Complainant on the basis of race, but instead did not have knowledge regarding his claim of discriminatory hiring practices until he filed an ethics complaint.

Upon receipt of the ethics complaint, Ms. Dixon, fully investigated the allegations of discriminatory hiring practices and the circumstances surrounding Mr. Brown's termination. Recruiting records were pulled for the time period January 1, 2008 through August 1, 2008 in the Colorado market. Out of 52 positions that were filled 10.4% were filled by black applicants. Compared to the Colorado censes data of 4.1%[10], Flextronics is showing that our hiring percentage of blacks is greater than that of the market. The data shows that the hire to state ratio within Colorado shows that the diversity in our stores go beyond what the local demographics are stating and that Flextronics does not have any systemic issues or discriminatory hiring practices in the Colorado Market. In addition, Ms. Dixon reviewed Mr. Brown's termination record and based on all the facts determined that Mr. Brown's termination from Flextronics was solely based on his violation of company policy.

---

[10] Source U.S. Census Bureau: State and County QuickFacts.
Re: Charging Party: **Mr. Brown EEOC Complaint No. 541-2008-02949**

## CONCLUSION

As the preceding discussion makes clear, Randolph V. Brown, Sr. was not discriminated on the basis of race or any other basis during his employment with the company and in addition was not retaliated against for reporting alleged discriminatory practices. Complainant has provided no information explaining the basis for his belief that he was treated differently then other employees, while the Company has clearly demonstrated that all employees are held to the same reasonable standards of the Code of Business Conduct and Ethics.

Flextronics strongly believes there is no merit to the charges of discrimination filed by Randolph Brown. Clearly the circumstances demonstrate that Flextronics has acted reasonably in all its dealings with the Complainant, and at no time discriminated against him or otherwise subjected him to unlawful treatment in the course of his employment with the Company. For these reasons, Flextronics respectfully requests that the Agency render a "no cause" finding with respect to Mr. Brown's Charge.

If further information is required, please contact me at 704-509-8297.

Respectfully Submitted,

*Monica Ek*

Monica Ek
Compliance Manager
Human Resources

Cc: Gráinne M. Blanchette; Compliance Director

Re:     Charging Party: **Mr. Brown EEOC Complaint No. 541-2008-02949**

# MY RESPONSE TO THE ALLEGATION MADE AGAINGT ME FROM FLEXTRONICS

## MAILED TO EEOC ON December 5, 2008



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**
**Denver Field Office**

303 East 17th Avenue, Suite 510
Denver, CO 80203
(303) 866-1300
TTY (303) 866-1950
FAX (303) 866-1085
1-800-669-4000

November 24, 2008

Mr. Randolph V. Brown, Sr.
6921 Mill Brook Circle
Fountain, Colorado 80817

> New Address Change
> 2002 Legacy Ridge View
> Apt 103
> C/S Colo 80910

Re:  Randolph Brown v. Flextronics
     Charge No: 541-2008-03106

Dear Mr. Brown:

Please be advised the Respondent has provided a response to your charge of employment discrimination. Enclosed is Respondent's response to your allegations. Please be advised this is a confidential document and should not be disclosed to the public. You may share it with your private attorney if you choose to hire one. In addition, the Equal Employment Opportunity is only providing a copy of the Respondent's response; the exhibits will not be provided at this time. If you retain an attorney, he/she will need to send me a letter of representation.

Please provide a written rebuttal to Respondent's position by **December 29, 2008**. Your rebuttal or any information you provide will be considered in determining if further investigation is warranted. If the EEOC determines it will not conduct further investigation, you will be issued a notice of Right to Sue and be allowed to pursue your allegations in court, on your own, with a private attorney. If you have any questions, please feel free to contact me at (303) 866-1336.

Sincerely,

Andrew G. Williams
Enforcement Supervisor

Enclosure:
  Respondent's Position Statement

EEOC Attn: Charge No: 541-2008-03106
Denver Field Office
303 East 17th Avenue
Suite 510
Denver, Co 80203

Randolph V. Brown Sr
2002 Legacy Ridge View
Apt 103
Colorado Springs, Colorado 80910
719-355-5013 Cell Phone
719-355-5014 Cell Phone #2

Ref: Rebuttal answer to Flextronics Reply.

Date:   December 3, 2008

Dear:   Mr. Andrew G. Williams
        Enforcement Supervisor

I am replying to the letter you received from Flextronics regarding my separation from this organization. I have read their response to my allegation against them on wrongful termination based on discrimination, and I have found that there statements are based on hear say and no fact.

### Since June 25, 2006 To July 31, 2008

I have never been written up for any infractions by this company for any reasons. This company states that I was promoted and was transferred from Texas to Colorado, this is not the case. I took leave to be interviewed by Mr. David Verheggen and Marty Levine, so this required me to come to Colorado to be interviewed for this position. I was later hired by Marty Levine not David Verheggen.

I will address the allegations given to your department that Flextronics states I was terminated for. On many occasions I have tried to hire people of color and each time they were found to be not suitable for hire by my supervisor David Verheggen. I have visited every store from Pueblo to Denver Colorado, not finding 1 Afro American working for Flextronics Corporation.

The person they are mentioning I tried to hire where they claim I violated their ethics violation his name is Mr. Dale Little, who is my wife's ex-husbands child, who stays in contact with my wife, and he had asked me if I could help him find employment. This person is in no way related to my wife or me, but by association of marriage only.

Page # 2

I stated to him that my area is in need of good workers and that I would be happy for him to come to work for my company. He came down and I began to help him in his pursuit to work for our company. I assisted him in preparing a resume with my address listed on his resume. He had asked if he could stay with us until he was able to get on his feet. I agreed and he began his process in applying for employment.

Flextronics would have you believe that I concealed his identity from them, and failed to mention he was related to me when this candidate was applying for employment with Flextronics.

**Fact:** The applicants resume had my address listed on it clearly showing that there was no intension of deceiving my company of anything with this applicant, and when I was asked why my address appeared on his resume I explained in detail to my boss David Verheggen the circumstances behind it. If there was a problem at that time, it was never mentioned to me. This person is not a relative of mine or of my wife, but from my wife's prior marriage of this person father, and he is willing to testify to that fact.

**Fact:** This person while going through the process of being hired was never hired therefore no violation of any ethics rules were violated. This person was being screened for hire <u>only</u>, and was never hired for employment with this company.

This company had no bases to terminate my employment based on there reasons given, I had not violated any ethic rules, nor have I ever been <u>**written up**</u> for any problems during my limited time in this position as territorial manager. I have been accused of many things by this company, but nothing substantiated by written warnings.

I feel that I was terminated based on my race being black, due to me bringing up allegations to Melissa Lightbody the HR Representative about the hiring practices of my supervisor David Verheggen, in our district area of not hiring people of color.

If an investigation was conducted of Flextronics hiring of Black people they would clearly see that they have not hired any since my being employed with them for my area alone to include the Pueblo, Colorado Springs, and Denver market area. Then after my departure, the same person I brought the complaint to about discrimination was promoted to Manager of the HR Department Melissa Lightbody.

This company acted irresponsibly in terminating my employment for what they say was my violating of there ethic rules, when in fact no violation took place due to no one being hired, and the person not being related to me. I contend that my termination was in part of my being an Afro American Male, who had brought allegations of this manager not hiring people of color, and Melissa Lightbody along with David Verheggen plotted against me to conceal the true facts behind my dismissal.
This concludes my STATEMENT……………………………………

**REQUEST FOR RELIEF**

Plaintiff requests the following relief:

I am asking The Courts To Find in my Favor That This Company Violated my Rights, and Discriminated Against me in form of Retaliation For Bringing up wrong doing by my Supervisor, Passing People of Color mainly Afro Americans who were Clearly Quilified Candidates For Hire. David Verhesgen never wanted me hired, it was Marty Levine who hired me as Territorial Manager. I'm asking The Courts To Impose a fine of 38,000 Dollars for each year I have been unemployed From This Company, and any Additional Cost it Deems Appropriate For Pain & Suffering it Cost my Family.

Date: 4/26/2011

(Plaintiff's Original Signature)

1319 Columbine CT
(Street Address)

Arlington, Tx 76013
(City, State, ZIP)

719-231-1284
(Telephone Number)