IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 11-cv-01117-LTB-KLM

RANDOLPH V. BROWN, SR.,

       Plaintiff,

v.

FLEXTRONICS AMERICA, LLC,

       Defendant.

_____

**RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

       This matter is before the Court on Defendant's **Motion for Summary Judgment**

[Docket No. 57; Filed April 22, 2013] (the "Motion").  On April 24, 2013, Plaintiff, who is

proceeding *pro se*, filed a Response [#60].  On May 14, 2013, Defendant filed a Reply

[#63].  Pursuant to 28 U.S.C. § 636(b)(1)(A) and D.C.COLO.LCivR 72.1C, the Motion has

been referred to this Court for a recommendation regarding disposition [#59].  The Court

has reviewed the Motion, the Response, the Reply, the entire case file, and the applicable

law, and is sufficiently advised in the premises. For the reasons set forth below, the Court

respectfully **RECOMMENDS** that the Motion [#57] be **GRANTED**.

## I. Summary of the Case[1]

       On April 28, 2011, Plaintiff Randolph V. Brown, who is African-American, initiated

---

[1] These facts are taken largely from Defendant's Statement of Undisputed Facts included as part of the Motion [#57].  While Plaintiff did not directly address Defendant's Statement of Undisputed Facts in his Response [#60], the Court includes citations to pleadings filed by both parties where appropriate to establish that the given fact is, in fact, undisputed.

this Title VII action against Defendant Flextronics America, LLC. *See generally Compl.* [#1]. In this Title VII action, Plaintiff, who was employed by Defendant, claims that Defendant violated Title VII by terminating Plaintiff's employment. *Am. Compl.* [#8] at 2-6. Evaluation of Plaintiff's claim requires a thorough review of the factual background.

On or around June 26, 2006, Plaintiff was hired by Solectron Corporation (which was soon thereafter acquired by Defendant) as a Customer Service Technician in Dallas, Texas. *Motion* [#57] at 2. At the time of his hire, Plaintiff received documents detailing employment policies and standards. *Id.* These documents included a Code of Business Conduct and Ethics (the "Code"). *See Motion Ex. 2* [#57-2, #57-3]. Pursuant to the Code, employees were alerted that "[f]ailure to comply with the [C]ode could lead to disciplinary action, up to and including termination of employment." *Motion Ex. 2* [#57-2] at 5; *see also Motion Ex. 2* [#57-3] at 21. Among other restrictions, the Code contained provisions to limit working with kith and kin: "As a general rule, you should avoid conducting company business with a relative or significant other. . . . Any dealings with a related party must be conducted in such a way that no preferential treatment is given."[2] *Motion Ex. 2* [#57-2] at 13.

Plaintiff worked initially as a Customer Service Technician for third-party contractor Verizon Wireless pursuant to an agreement by which Defendant provided personnel to work in Verizon retail establishments. *Motion* [#57] at 2. In early 2008, however, Plaintiff was promoted to Territory Manager and transferred to Denver, Colorado. *Motion* [#57] at 3; *Sched. Order* [#45] at 2. As a Territory Manager, Plaintiff managed technicians and

---

[2] The Code dictates that Defendant's Human Resources Department is responsible for determining whether a relationship is covered by this policy. *Motion Ex. 2* [#57-2] at 13.

provided business reporting for multiple Verizon retail stores. *Motion* [#57] at 3; *Sched. Order* [#45] at 2. In this capacity, Plaintiff reported to David Verheggen ("Verheggen"), who acted as Regional Manager for Colorado and Wyoming. *Motion* [#57] at 3; *Sched. Order* [#45] at 2.

Shortly after Plaintiff's promotion and transfer, Verheggen received a letter from a technician who was concerned about Plaintiff's management style. *See Motion Ex. 3* [#57-4]. In the letter, the technician lamented that Plaintiff had "alienat[ed] both his subordinates as well as the Verizon staff, [because] he [made] decisions that d[id]n't seem like sound business practices . . . ." *Id.* at 1. The technician complained that Plaintiff's management style negatively impacted employee retention at his assigned Verizon retail stores. *Id.* The technician concluded her letter with a plea for return to a "comfortable, fun work environment" where she and other technicians did not feel as though every mistake they made would be severely punished. *Id.* at 2.

Perry Jultak ("Jultak"), Verizon's Quality Assurance Manager, received similar complaints regarding Plaintiff. *Motion* [#57] at 4. In a June 24, 2008 email to Verheggen, Jultak explained,

> Over the past several months, these complaints have only gotten worse. I am fielding complaints almost on a daily bases [sic] and the district manager Traci Harwood has called me and told me that she doesn't even want Randy in her district. She says that she would rather do without Flextronics in her district rather than deal with Randy Brown.

*Motion Ex. 4* [#57-5] at 1. Jultak continued, recounting,

> [W]eekly ATL [Acting Team Lead] calls held on Monday's [sic] can only be described as a joke when it comes to Randy. The other 2 ATL's [sic] hired around the same time as Randy have been able to pull their numbers for the Monday calls and understand what they are talking about. . . . Each week [Randy] has major errors on his spreadsheet that make it impossible to even have a conversation around his

performance.  Not once has he owned the mistakes or any part of the business.  All we hear are excuses and blame on his team.

*Id.*  Jultak concluded by stating, "Randy Brown is a detriment to Verizon and at this time [I] request that he no longer support any of the stores in the Mountain region."  *Id.*

Around the time of Jultak's correspondence, Plaintiff informed Verheggen that he had identified a candidate for hire.  *Motion* [#57] at 5; *Sched. Order* [#45] at 2.  The candidate, Dale Littles ("Littles"), was not presented through normal hiring channels; instead Littles was presented by Plaintiff as a rush candidate for whom initial review had already been performed.  *Motion* [#57] at 5.  In reviewing Littles's credentials, Defendant became aware that Littles used the same address and phone number as Plaintiff.  *Motion* [#57] at 5; *Am. Compl.* [#8] at 4.  Plaintiff conceded that Littles was related to Plaintiff's wife and that Littles had contacted him in an effort to find work.  *Motion Ex. 6* [#57-7] at 1 (correspondence from Plaintiff stating "[Littles] was kin to my wife").  In explanation, however, Plaintiff argued that Littles "was not a relative [of Plaintiff], and was not living with [Plaintiff]," but was "only using [Plaintiff's] address and phone as a way for employers to contact him."  *Id.* at 1.

On July 1, 2008, in reaction to the incident involving Littles, Plaintiff allegedly filed a complaint with Melissa Lightbody ("Lightbody"), a Human Resources Representative employed by Defendant.[3]  *Am. Compl.* [#8] at 4; *see also Motion Ex. 6* [#57-7] at 1.  The

---

[3] The date and person to whom Plaintiff complained are disputed but there is no dispute that such a complaint was lodged either verbally to Lightbody on July 1, 2008 or in writing to Carol Dixon on July 29, 2008.  *Compare Am. Compl.* [#8] at 4 (alleging Plaintiff made complaint to Lightbody on July 1, 2008) and *Motion Ex. 6* [#57-7] (a written complaint submitted to Carol Dixon of Defendant's Human Resources Department on July 29, 2008, the day after Plaintiff was put on suspension and two days prior to Plaintiff's termination).

complaint allegedly concerned discriminatory hiring practices perpetuated by Verheggen. *Am. Compl.* [#8] at 3-4; *Motion Ex. 6* [#57-7] at 1.   In short, Plaintiff contended that Verheggen was "[i]ntentionally passing up people of color . . . for employment within the company, when clearly the ones [Plaintiff] interviewed were qualified." *Am. Compl.* [#8] at 3.

Plaintiff alleges that, shortly after filing his complaint with Lightbody, he took a medical leave of absence. *Motion* [#57] at 5; *Am. Compl.* [#8] at 4.  Upon his return to work on July 28, 2008, Verheggen informed Plaintiff that Plaintiff was suspended pending an investigation concerning Plaintiff's job performance and the incident involving Littles. *Motion Ex. 6* [#57-7] at 1.  Following completion of its investigation, Defendant informed Plaintiff that Plaintiff had committed an "ethics violation." *Am. Compl.* [#8] at 3.  As a result, Defendant terminated Plaintiff's employment on July 31, 2008. *Id.*

Plaintiff alleges that the "ethics violation" for which he was ostensibly discharged was "just a smoke screen." *Id.*  Plaintiff contends that Littles is not a relative and was not ultimately hired by Defendant and that, consequently, Plaintiff committed no ethics violation. *Id.* at 3-4. Instead, Plaintiff avers that Defendant terminated Plaintiff's employment because Plaintiff complained about Verheggen's discriminatory hiring practices. *Id.* at 3.  As a result, Plaintiff asserts that the reasons for his employment termination were discriminatory—based on his race and color—and retaliatory, and therefore in violation of Title VII of the Civil Rights Act of 1964. *Id.* at 2.

Defendant responds with the Motion at issue [#57].  Defendant asserts that Plaintiff cannot make a prima facie showing that Defendant discriminated against Plaintiff on the basis of race or color. *Id.* at 7-8.  Defendant further asserts that it had a legitimate, non-

discriminatory reason for terminating Plaintiff's employment.  *Id.* at 8-9.  Defendant

maintains that it is therefore entitled to summary judgment.  *See id.* at 10.

## II.  Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to

assess whether trial is necessary.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Pursuant to Fed. R. Civ. P. 56(c), summary judgment shall be granted if "the pleadings, the

discovery and disclosure materials on file, and any affidavits show that there is no genuine

issue as to any material fact and that the movant is entitled to judgment as a matter of law."

An issue is genuine if the evidence is such that a reasonable jury could resolve the issue

in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 277 U.S. 242, 248 (1986).

A fact is material if it might affect the outcome of the case under the governing substantive

law.  *Id.*

The burden is on the movant to show the absence of a genuine issue of material

fact.  *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*,

477 U.S. at 323).  When the movant does not bear the ultimate burden of persuasion at

trial, the "movant may make its prima facie demonstration [of the absence of a genuine

issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the

nonmovant on an essential element of the nonmovant's claim."  *Id.* at 671.  If the movant

carries the initial burden of making a prima facie showing of a lack of evidence, the burden

shifts to the nonmovant to put forth sufficient evidence for each essential element of his

claim such that a reasonable jury could find in his favor.  *See Anderson*, 277 U.S. at 248;

*Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321,

1326 (10th Cir. 1999).  The nonmovant must go beyond the allegations and denials of his

pleadings and provide admissible evidence, which the Court views in the light most favorable to him. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Panis v. Mission Hills Bank, N.A.*, 60 F.3d 1486, 1490 (10th Cir. 1995) (citing *Celotex*, 477 U.S. at 324). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright et al., Federal Practice and Procedure § 2738 at 356 (3d ed.1998).

Additionally, when considering Plaintiff's filings, the Court is mindful that it must construe liberally the filings of a *pro se* litigant. *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). However, the Court should not be the *pro se* litigant's advocate, nor should the Court "supply additional factual allegations to round out [the *pro se* litigant's] complaint or construct a legal theory on [his] behalf." *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997) (citing *Hall*, 935 F.2d at 1110). In addition, *pro se* litigants must follow the same procedural rules that govern other litigants. *Nielson v. Price*, 17 F.3d 1276, 1277 (10th Cir. 1994).

### III.  Analysis

Title VII prohibits an employer from engaging in certain activities. Among these activities, Title VII forbids an employer from "discharg[ing] any individual . . . because of such individual's race, color, religion, sex, or national origin . . . ," 42 U.S.C. § 2000(e)-2(a)(1) (discrimination), and also forbids an employer from retaliating against an individual

-7-

because the individual "has opposed any practice made an unlawful employment practice" by Title VII, 42 U.S.C. § 2000(e)-3(a) (retaliation).  A plaintiff may prove discrimination and retaliation through either direct or circumstantial evidence.  *See Adamson v. Multi Cmty. Diversified Servs., Inc.*, 514 F.3d 1136, 1145 (10th Cir. 2008); *Anderson v. Acad. Sch. Dist. 20*, 122 F. App'x 912, 916 (10th Cir. 2004).  Direct evidence demonstrates on its face that employment termination was either discriminatory or retaliatory.  *Adamson*, 514 F.3d at 1145.  In contrast, circumstantial evidence permits the fact finder to draw a reasonable inference from facts indirectly related to discrimination or retaliation that discrimination or retaliation has, in fact, occurred.  *Anderson*, 122 F. App'x at 916.

Because Plaintiff does not provide direct evidence of discrimination or retaliation, and because the Court's review of the record reveals none, Plaintiff's Title VII claims are subject to the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).   Under this framework, the plaintiff bears the initial burden of establishing a prima facie case of discrimination or retaliation.  *Id.*  If the plaintiff meets this initial burden, the defendant must then offer a legitimate, non-discriminatory reason for its employment action.  *Id.*  If the defendant offers a legitimate, non-discriminatory reason for its employment action, the plaintiff then bears the ultimate burden of demonstrating that the defendant's proffered reason is pretextual.  *Id.*

## A.    Title VII Discrimination

Plaintiff cannot establish a prima facie case of discrimination under Title VII. To make a prima facie case of discrimination under Title VII, a plaintiff must establish "that (1) [he] belongs to some protected class, (2) [he] was qualified for the position or benefit at issue, (3) [he] suffered an adverse employment action, and (4) [he] was treated less

favorably than others . . . ." *Argo v. Blue Cross & Blue Shield of Kan., Inc.*, 452 F.3d 1193, 1201 (10th Cir. 2006) (quoting *Exum v. U.S. Olympic Comm.*, 389 F.3d 1130, 1134 (10th Cir. 2004)). As to the first prong, it is not disputed that Plaintiff belongs to a protected class. *See Voltz v. Coca-Cola Enters., Inc.*, 91 F. App'x 63, 68 (10th Cir. 2004) (noting that African Americans are a protected class). As to the third prong, Plaintiff's termination certainly constitutes an adverse employment action. *See Anderson v. Coors Brewing Co.*, 181 F.3d 1171, 1178 (10th Cir. 1999). However, while Plaintiff easily satisfies prongs one and three of the prima facie standard for Title VII discrimination, and may satisfy the second prong, such is not true for prong four.

The second prong of the prima facie standard for Title VII discrimination requires Plaintiff to prove that he was qualified to hold his position as Territory Manager. *Argo*, 452 F.3d at 1201. "[A] plaintiff may make out a prima facie case of discrimination . . . by credible evidence that [he] continued to possess the objective qualifications [he] held when [he] was hired or by [his] own testimony that [his] work was satisfactory, even when disputed by [his] employer, or by evidence that [he] held [his] position for a significant period of time." *Smith v. Oklahoma ex rel. Tulsa Cnty. Dist. Attorney*, 245 F. App'x 807, 812 (10th Cir. 2007) (internal quotation omitted). Here, Plaintiff admits that, prior to termination of his employment, he was aware that Defendant was looking into his failure to "perform[] [his] [j]ob in a satisfactory way." *Motion Ex. 6* [#57-7] at 1. However, neither party offers any evidence relating to any change in Plaintiff's credentials. Further, Defendant did not "formally reprimand, suspend, or discharge" Plaintiff until after he complained to Lightbody. *Smith*, 245 F. App'x at 812 (finding that plaintiff satisfied the second prong of the test). As a result, the Court finds that because there is no evidence

that Plaintiff's credentials changed and because Defendant would likely not have hired him initially if he had not possessed sufficient credentials to perform the job, Plaintiff has satisfied the second prong of the test.

The fourth prong of the prima facie standard for Title VII discrimination requires Plaintiff to offer evidence that he was treated less favorably than other similarly-situated employees. *Argo*, 452 F.3d at 1201. Plaintiff does not do so. The Tenth Circuit has noted that "[s]imilarly situated employees are those who deal with the same supervisor and are subject to the same standards governing performance evaluation and discipline." *McGowan v. City of Eufala*, 472 F.3d 736, 745 (10th Cir. 2006) (quoting *Armaburu v. Boeing Co.*, 112 F.3d 1398, 1404 (10th Cir. 1997)). At no point in the record has Plaintiff identified another Flextronics employee who was treated more favorably. The Court is fully cognizant of Plaintiff's conclusory allegation that he was treated unfavorably; but the standard is one of relative—and not absolute—disfavor. Accordingly, absent identification of any similarly-situated employees, the Court cannot find that Plaintiff has created a genuine issue of material fact regarding whether he was treated less favorably.

Because Plaintiff has not satisfied prong four of the prima facie standard for Title VII discrimination, Plaintiff cannot make out a prima facie case of Title VII discrimination. Accordingly, the Court **recommends** that the Motion [#57] be **granted** in regard to Plaintiff's Title VII discrimination claim.

**B.    Title VII Retaliation**

To establish a prima facie case of retaliation pursuant to Title VII, a plaintiff must show that "(1) [he] engaged in protected opposition to discrimination; (2) [he] suffered an

adverse action that a reasonable employee would have found material; and (3) a causal nexus exists between [his] opposition and the employer's adverse action." *Durant v. MillerCoors, LLC*, 415 F. App'x 927, 932 (10th Cir. 2011) (quoting *Montes v. Vail Clinic, Inc.*, 497 F.3d 1160, 1176 (10th Cir. 2007)). Plaintiff satisfies this prima facie standard. Regarding the first prong, Plaintiff's complaint to Lightbody regarding Verheggen's allegedly discriminatory proclivities constituted protected opposition to discrimination. *See Pastran v. K-Mart Corp.*, 210 F.3d 1201, 1205 n.4 (10th Cir. 2000) (quoting *Robbins v. Jefferson Cnty. Sch. Dist. R-1*, 186 F.3d 1253, 1258 (10th Cir. 1999)) (internal quotation marks omitted) ("[A] plaintiff does not have to prove the validity of the grievance [he] was allegedly punished for lodging; opposition activity is protected when it is based on a mistaken good faith belief that Title VII has been violated."). As to the second prong, and as noted in Part III.A, Plaintiff's termination constitutes an adverse employment action. *See Anderson*, 181 F.3d at 1178. Regarding the third prong, a causal nexus exists between Plaintiff's complaint and Plaintiff's termination because little time elapsed between Plaintiff's alleged complaint on July 1, 2008[4] and Plaintiff's termination on July 31, 2008.[5] *See Bullington v.*

---

[4] As noted previously, there is a dispute regarding when and to whom Plaintiff made a complaint regarding Verheggen's allegedly discriminatory practices. *Compare Am. Compl.* [#8] at 4 (alleging Plaintiff made a complaint to Lightbody on July 1, 2008) and *Motion Ex. 6* [#57-7] (a written complaint submitted to Carol Dixon of Defendant's Human Resources Department on July 29, 2008, the day after Plaintiff was put on suspension and two days prior to Plaintiff's termination). However, because the Motion presently before the Court is one for summary judgment, "the court must review all of the evidence in the record and draw all reasonable inferences in favor of the nonmoving party." *Gossett v. Okla ex rel. Bd. of Regents for Langston Univ.*, 245 F.3d 1172, 1175 (10th Cir. 2001) (citing *Reeves v. Sanderson Plumbing Prod., Inc.*, 530 U.S. 133 (2000). Therefore, for purposes of this Motion, the Court will assume that Plaintiff made a complaint to Lightbody on July 1, 2008.

[5] Although Plaintiff complained to Lightbody on July 1, 2008 and was not terminated until July 31, 2008, Plaintiff was on medical leave for nearly all of the intervening time. *Am. Compl.* [#8] at 4. Thus, in essence, Plaintiff was not working for most of the time between his complaint and

*United Air Lines, Inc.*, 186 F.3d 1301, 1321 (10th Cir. 1999) (stating that protected conduct closely followed by adverse action supports an inference of causal connection). Accordingly, in his Amended Complaint [#8], Plaintiff has established a prima facie case of Title VII retaliation.

Once Plaintiff has made a prima facie showing of retaliation, the burden shifts to Defendant to offer a legitimate, non-discriminatory reason for terminating Plaintiff's employment. *McDonnell Douglas Corp.*, 411 U.S. at 802-04. Defendant offers two. First, Defendant asserts that Plaintiff committed an ethics violation. *Motion* [#57] at 8. Defendant argues that because the Code made clear that ethics violations could be cause for termination of employment, *Motion Ex. 2* [#57-2] at 5; *see also Motion Ex. 2* [#57-3] at 21, Defendant's finding of an ethics violation constitutes a legitimate, non-discriminatory reason for terminating Plaintiff's employment. *Motion* [#57] at 8-9. Second, Defendant asserts that Plaintiff had an exceptionally poor job-performance record. *See Motion* [#57] at 4; *Motion Ex. 4* [#57-5] at 1. Defendant argues that because the Code made clear that substandard performance could be cause for termination of employment, *Motion Ex. 2* [#57-2] at 9, Defendant's finding of poor performance constitutes a second legitimate, non-discriminatory reason for terminating Plaintiff's employment. *Motion* [#57] at 8-9.

Where, as here, Defendant has offered a legitimate, non-discriminatory reason for terminating Plaintiff's employment, the burden shifts back to Plaintiff, who must prove that Defendant's proffered reason is pretextual. *McDonnell Douglas Corp.*, 411 U.S. at 802-04. "[Plaintiff] can establish pretext by pointing to weaknesses, implausibilities, inconsistencies,

---

his termination. For purposes of the prima facie standard for Title VII retaliation, the Court therefore finds that these events occurred within a short time.

incoherencies, or contradictions in the employer's proffered legitimate reasons." *Kirkpatrick v. Pfizer, Inc.*, 391 F. App'x 712, 721 (10th Cir. 2010) (quoting *Mickelson v. N.Y. Life Ins. Co.*, 460 F.3d 1304, 1315 (10th Cir. 2006)) (internal quotation marks omitted).  Plaintiff fails to allege any such deficiencies.  Indeed, Plaintiff's only attempt to show pretext lies in his conclusory declaration that his ethics violation "was just a smoke screen." *Am. Compl.* [#8] at 3.  The Court finds this conclusory declaration inadequate.  *See Ford v. West*, 222 F.3d 767, 777 (10th Cir. 2000) ("Vague, conclusory statements do not suffice to create a genuine issue of material fact."); *Branson*, 853 F.2d at 772 (stating that "mere conjecture" of pretext is an insufficient basis for denial of summary judgment).  Plaintiff has failed to provide any specific facts to support his belief that his alleged ethics violation was pretextual, and beyond vague speculation and nebulous generalities, the record reveals a striking lack of evidentiary support for such a proposition.  Accordingly, Plaintiff cannot carry his burden of showing that Defendant's proffered reasons for terminating Plaintiff's employment were pretextual.

Assuming, *arguendo*, that Plaintiff has established a prima facie case of Title VII retaliation, Plaintiff has not demonstrated a genuine issue of material fact regarding whether his termination was pretextual.  Hence, he cannot survive the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973).  Accordingly, the Court **recommends** that the Motion be **granted** in regard to Plaintiff's claim for Title VII retaliation.

### IV.  Conclusion

For the foregoing reasons, the Court respectfully **RECOMMENDS** that the Motion

[#57] be **GRANTED**.

IT IS HEREBY **ORDERED** that pursuant to Fed. R. Civ. P. 72, the parties shall have fourteen (14) days after service of this Recommendation to serve and file any written objections in order to obtain reconsideration by the District Judge to whom this case is assigned. A party's failure to serve and file specific, written objections waives de novo review of the Recommendation by the District Judge, Fed. R. Civ. P. 72(b); *Thomas v. Arn*, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions. *Makin v. Colo. Dep't of Corr.*, 183 F.3d 1205, 1210 (10th Cir. 1999); *Talley v. Hesse*, 91 F.3d 1411, 1412-13 (10th Cir. 1996). A party's objections to this Recommendation must be both timely and specific to preserve an issue for de novo review by the District Court or for appellate review. *United States v. One Parcel of Real Prop.*, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated: June 17, 2013

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge